**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| | § | |
| IN RE: | § | CASE NO. |
| | § | |
| RAPID-TORC, INC. | § | 12-39217-H5-11 |
| | § | (Chapter 11) |
| | § | |
| Debtor. | § | |
| | § | |

## EXAMINER'S PRELIMINARY REPORT

TO THE HONORABLE KAREN K. BROWN
UNITED STATES BANKRUPTCY JUDGE:

Elvis B. Foster, the examiner appointed in the above-captioned case (the "Examiner"), now files this Preliminary Report (the "Report").  In support of this Report, the Examiner respectfully represents as follows:

## BACKGROUND

1.      On December 14, 2012 (the "Petition Date"), the Debtor commenced this case by filing its voluntary petitions under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330 (as amended, the "Bankruptcy Code").

2.      On February 6, 2013, the U.S. Trustee filed its Application for Order Approving Appointment of Examiner [Doc. No. 45].  The Court entered an Agreed Order Approving Appointment of Elvis B. Foster as Examiner on March 3, 2013 [Doc. No. 71] (the "Examiner Order").

3.      The Examiner Order directed the Examiner to review transfers among the Debtor, related companies, and insiders.  The Examiner Order directed the Examiner to file periodic reports, with the first such report being filed before May 6, 2013.  The Examiner Order also

directed that such reports include a recommendation as to whether or not appointment of a chapter 11 trustee was appropriate.

4.       On March 15, 2013, the Debtor filed an emergency motion to sell substantially all of it assets (the "Sale Motion") [Docket No. 78].  The Debtor has alleged that the proceeds from the sale will be sufficient to pay all creditors in full.  The Sale Motion is set for hearing on April 18, 2013 at 3:30 p.m. (the "Sale Hearing").

5.       Counsel for the United States Trustee requested that the Examiner file a report in advance of the Sale Hearing.  This Report is to provide a preliminary description of the Examiner's review and to provide a summary of the Examiner's finding thus far.  This Report will not address the issue of whether appointment of a chapter 11 trustee is appropriate.

## REPORT

6.       This Report is a summary of significant findings and observations to date.  The Examiner has discussed the matters addressed herein with the Debtor, Debtor's Counsel, Debtor's Accountant, counsel for the Official Committee of Unsecured Creditors (the "Committee"), counsel to Dynamic Tools, Inc. ("Dynamic Tools") and counsel for the U. S. Trustee.

### A.       The Bankruptcy Filing And Appointment of the Examiner

7.       The Debtor sought bankruptcy protection on December 14, 2012.  While the Debtor seems to have been experiencing financial pressures, the most apparent reasons for the December 14 filing were the aggressive post-judgment discovery activities Dynamic and due diligence activities associated with the contemplated sale of the Debtor.

8.       The Examiner was appointed to determine whether cause existed to appoint a Chapter 11 Trustee.  Specifically, in making such a determination, the Examiner was instructed

2

to review: (i) the Debtor's inter-company transactions and transfers; (ii) the Debtor's transactions and transfers with non-debtor affiliates; and (iii) Debtor's transactions and transfers with insiders, officers, directors and principals.

### B.      The Debtor and its Related Entities

9.      The Debtor has several related brother/sister companies, which include: (i) Bolttech Mannings, Inc., (ii) Speedorange, Inc., and (iii) Rapid-Torc, SA, ("Rapid-Torc SA") a Belgian corporation.  Mr. Roger Dischert and his wife, Ms. Coronne Billard Dischert, control all entities. As explained below, however, there is a dispute involving the Discherts, the Debtor, Rapid-Torc, SA, and Concord Investments, Inc., regarding stock ownership.

### C.      Proposed Sale of the Debtor

10.      During the months preceding the bankruptcy filing, the Debtor was negotiating with potential purchasers for the sale of its assets.  The Examiner is aware of Debtor's fall 2011 discussions of a potential sale with Grey Mountain Partners.[1]  Additionally, Debtor was in discussions with Atlas Copco Tools ("Atlas") since at least August 2012.

11.      Debtor entered into an Asset Purchase Agreement ("APA") with Atlas on March 8, 2013, subject to bankruptcy court approval.  Under the APA, Atlas agreed to purchase substantially all the operating assets of the Debtor and Rapid-Torc, SA, and intellectual property owned by Bolttech Mannings.  The Debtor has asserted that the sale with Atlas will provide sufficient proceeds to pay all creditors in full.

### D.      The Debtor's Statement of Financial Affairs and Schedules

12.      As part of the Examiner's review, the Examiner reviewed the Debtors' financial filings.  The Debtor's Statement of Financial Affairs ("SOFAs") and schedules of assets and

---

[1] www.greymountain.com

liabilities (the "Schedules") contained significant omissions and the Monthly Operating Reports ("MORs") were improperly prepared.  The Debtor had omitted all inter-company accounts, the shareholder receivable and a note payable to a third party.  The Debtor's reason for omission was that these items were not part of the proposed sale and thus disclosure was not required.

13.     Responding to pressure from Dynamic and the Committee, nearly four months into the bankruptcy, the Debtor engaged an Accountant to prepare its SOFAs, Schedules and MORs.[2]  The Debtor filed revised SOFAs, Schedules and MORs on April 12, 2013.

### E.     Concord's Claims and Dispute with the Debtor

14.     Concord International Marketing ("International") and Concord Investments, SA ("Investments") (together "Concord") have filed Proofs of Claim totaling $297,500 and $211,862, respectively.   On February 7, 2013, at the 341 meeting of creditors (the "341 Meeting"), Concord's Counsel attempted question Mr. Dischert, the Debtor representative.  Mr. Savvas Stefanides, Debtor's pre-bankruptcy counsel and Mr. Dischert's personal counsel instructed Mr. Dischert not to answer questions regarding Concord.[3]  Mr. Dischert did, however, respond to the question "can you explain why you have not listed Concord as a creditor" by answering "It's [Concord] not".[4]

15.     Further questioning by Concord's Counsel resulted in another instruction by Mr. Stefanides for Mr. Dischert to not answer the question.  Mr. Stefanides stated for the record, "They [Concord] are not disputed.  They don't exist in the U.S.  This is a fraud.  That man

---

[2]     On April 3, 2013, Mr. Rothberg, Dynamic's Counsel, threatened to move for a Trustee if the Debtor did not file accurate Schedules and MOR.  On April 12, 2013, Dynamic filed a motion to appoint chapter 11 trustee [Docket No. 126].

[3]     Transcript of §341 Meeting, p. 79.

[4]     Id.

[Concord's Counsel] does not know who he is employed with.  He's sitting next to a convicted criminal [the daughter of Mr. Daniel Schultz, Concord's principal]."[5]

16.     A review of the Debtor's accounting records and other documents disclosed that the Debtor had recorded but improperly described one of two notes to Investment in the Debtor's books and records.   Investment's Proof of Claim for $211,862 represented two notes.  One note made by the Debtor and the other made by Rapid-Torc SA.  Therefore, at least one of the notes appears to represent a valid claim against the Debtor despite Debtor's insistence that Concord has no valid claims.

17.     Further review disclosed that the Debtor had recorded the Investment note payable as a liability to Rapid-Torc, SA.  The Debtor, however, has made required interest payments, including one $2,000 post-bankruptcy payment, on this note through Debtor's inter-company account with SA.  Thus, the Debtor improperly described the note to Investment in its accounting records, excluded the liability to Investment from its Schedules and improperly made an interest payment post-bankruptcy.  Debtor's amended Schedules now reflect $100,830 as due to Investment.

18.     Additionally, the Debtor previously represented to the Examiner that no consulting agreement with International existed.  However, a review of the Debtor's accounting records disclosed that Debtor had made required payments on the consulting agreement in 2008.  Debtor's Counsel was unaware of these payments until informed of them by the Examiner.

19.     Concord's Counsel has made documents provided by his client available to the Examiner.  Those documents reflect that, although the consulting agreement is between the Debtor and International, Rapid-Torc SA apparently made additional payments after 2008 on the

---

[5] Id.

consulting agreement. Moreover, since the filing, Mr. Dischert may have negotiated with Concord for a settlement of litigation pending in Belgium regarding the consulting agreement and disputed shares in Rapid-Torc Worldwide, LLC ("Worldwide").[6]

20.     A question regarding ownership of the Debtor appears to exist.[7]  Investment has alleged a 15% ownership interest in a new entity named Rapid-Torc Group Worldwide, LLC.[8] The available documents, taken at face value, create numerous questions.  Notable is a September 30, 2012, letter from Grey Mountain Partners Vice-President, Ms. Beth Lesniak.[9] This letter describes negotiations between Grey Mountain and Roger Dischert, Corrine Billard [Dischert] and Daniel Schultz, Concord's principal, regarding Grey Mountain's offer to purchase the Debtor and its related companies.

21.     The Grey Mountain letter identifies Mr. Schultz as a consultant to the Debtor and specifically references Mr. Schultz's "continuing equity interest".[10]  The Examiner has not conducted depositions but did contact Ms. Lesniak on Monday, April 9, 2013.  Ms. Lesniak has advised the Examiner that the letter was genuine and reflected the state of negotiations and Rapid-Torc's representations as of the date written.

---

[6] *See* April 2, 2013 E-mail, Re: Trans.: Rapid-Torc - Speedorange Info., a copy of which is attached hereto as **Exhibit "A."**

[7] Mr. Dischert obscured the Speedorange ownership at the Creditor's Meeting.  *See* Trascript of §341 Meeting, p. 30-33.

[8] *See* March 29, 2013 E-mail, Re: RT, a copy of which is attached hereto as **Exhibit "B."**  The Delaware Secretary of State records that Worldwide was incorporated on March 24, 2009.

[9] *See* September 30, 2011 Letter From Beth A. Lesniak to Daniel Schultz, Roger Dischert, and Corinne Billard, a copy of which is attached hereto as **Exhibit "C."**

[10] Id.

### F.    Intercompany Transfers

22.    The Debtor routinely engaged in transactions with Rapid-Torc SA, and Speedorange.  Rapid-Torc, SA, a non-debtor company, is party to the APA.  Speedorange, also a non-debtor, which allegedly discontinued operations circa May 2012, is not part of the APA.

23.    As previously discussed, the Debtor omitted from its Schedules and MORs the SA and Speedorange intercompany accounts receivables.  These omissions were significant because the SA receivable represented sales of product to a non-Debtor entity.  Likewise, the omitted Speedorange receivable, for the most part, represented physical assets to be sold under the APA.

24.    Dynamic's allegations regarding significant payments to SA do not appear, at this point in time, to be an issue.  The transactions between the Debtor and SA appear, for the most part, to be effected as a hybrid barter exchange.  Generally, SA owes the Debtor rather than visa-versa.  Except for the periodic cash settlement of differential amounts due, cash was not exchanged.  It appears that SA periodically paid cash to the Debtor to settle differential amounts.

25.    As part of document discovery in the Dynamic litigation, the Debtor produced check journals reflecting "payments" to SA.  These "payments" represented dummy checks used as an accounting mechanism to clear Debtor's purchases from SA.  These "checks" do not represent the transfer of cash.

26.    At this time, the Examiner has not reviewed SA's accounting records.  The Debtor has represented that SA maintains its accounting records outside of the United States.  The Examiner has not completed a review of the exchange of values represented by Debtor's purchases from SA or Debtor's sales to SA.

HOU:3307091.2

27.     Additionally, at this time, the Examiner has not formed an opinion regarding potential claims of the estate under theory of alter ego.  Markers of alter ego such as common control, stock ownership questions and barter transactions under Texas and Fifth Circuit criteria exist.  However, SA is a foreign entity, currently making the determination of the appropriate applicable law unclear.

### G.     The Litigation with Dynamic and Dynamic's Claim

28.     In November 2011, Dynamic filed a lawsuit alleging breach of contract and sworn account in Harris County District Court ("Dynamic Suit").[11]  It appears that Dynamic filed suit shortly after the breakdown of acquisition talks with Grey Mountain discussed above.  During the litigation, the Debtor did not cooperate with Dynamic's discovery requests resulting in sanctions.[12]  On May 18, 2012, the Court entered Summary Judgment in favor of Dynamic.

29.     The Debtor's accounting records and Bankruptcy Schedules reflect a $2,182,584 account payable to Dynamic.[13]  Transactions included in this balance covered the period from January 2008 through August 2011.[14]  Dynamic filed its Proof of Claim for $2,634,411, approximately the amount of the Judgment.  The Debtor's financial records and Schedules do not reflect the Judgment amount.

30.     There are contradictions regarding the Dynamic payable.  Mr. Dischert provided a May 6, 2012, Affidavit in the Dynamic suit stating, "Rapid-Torc, Inc. denies owing any amounts claimed By Dynamic Tools, Inc.  Any and all amounts owed have been paid in full and on

---

[11] Cause No. 2011-68440.

[12] The District Court sanctioned Debtor.  The Court compelled same day production and disallowed any objections or potential objections that had or could be asserted.  The District Court also dismissed with prejudice the Debtor's Counter Claim.

[13] QuickBooks Vendor History Report.

[14] Id.

time."[15]   Documents provided by Concord's Counsel reflect that Mr. Dischert, writing to Grey Mountain's Ms. Lesniak, characterized the payable to Dynamic as "vendor past dues" totaling $2,185,327.[16]

31.     The Debtor has stated its intention to continue its appeal of the judgment in the Dynamic Suit and, in the interim, has scheduled Mediation with Dynamic for April 17, 2013 to attempt resolve its issues with Dynamic.

## CONCLUSION

32.     The information reported herein is preliminary and provided at the request counsel for the United States Trustee.  The Examiner will continue his review of the Debtor's books and records and file subsequent reports as necessary, including a report as to whether the Examiner believes appointment of a chapter 11 trustee is appropriate.

By: /s/ Elvis B. Foster
    Elvis B. Foster, as Examiner in *In re Rapid-Torc, Inc.*, Case No. 12-39217

---

[15] *See* Affidavit of Roger Dischert in *Dynamic Tools, Inc. v. Rapid-Torc, Inc.*, Cause No. 2011-68440 in the 164th Judicial District of Harris County, a copy of which is attached hereto as **Exhibit "D."**

[16] *See* September 14, 2011 E-mail, Re: Rapid-Torc - Speedorange Info., a copy of which is attached hereto as **Exhibit "E."**

## CERTIFICATE OF SERVICE

I hereby certify that true and correct copies of the foregoing Report was served on the following parties and the parties on the attached service list by first class United States mail, postage prepaid, on the 16th day of April, 2013.  Service on known ECF Filing Users will automatically be accomplished through Notice of Electronic Filing as contemplated by this Court's Administrative Procedures for Electronic Filing.

*/s/ Joseph P. Rovira* _____
Joseph P. Rovira

Office of the United States Trustee
c/o Ellen M. Hickman
515 Rusk, Room 3516
Houston, Texas  77002

Barbara Mincey Rogers
Rogers & Andeson, PLLC
1415 North Loop West, Ste 1020
Houston, TX 77008
*Attorneys for the Debtor*

### Other Parties Requesting Notice

E. David Chanin
Kleinbard Bell & Brecker LLP
1650 Market Street
Philadelphia, PA 19103

Edward M. Flint
Silverman Acampora LLP
100 Jericho Quadrangle, Ste 33
Jericho, NY 11753

Marvin C. Moos
Ebanks Horne Rota Moos LLP
1301 McKinney St., Ste 2700
Houston, TX 77010

T. Josh Judd
Hoover Slovacek, LLP
5847 San Felipe, Suite 2200
Houston, TX 77047

HOU:3307091.2

R. Christopher Naylor
Devlin Naylor and Turbyfill
4801 Woodway, Ste 420 W
Houston, TX 77056

John P. Dillman
Linebarger Goggan et al.
P.O. Box 3064
Houston, TX 77253

Steven A. Leyh
Leyh, Payne & Mailia, PLLC
9545 Katy Freeway, Suite 200
Houston, TX 77024

Thomas Rosseland
Bodker Ramsay et al.
1800 Peachtree St. NW, Ste 615
Atlanta, GA 30309

HOU:3307091.2